United States Bankruptcy Court
Eastern District of Michigan
Southern Division

In re:
Collins & Aikman Corp., et al,                                  Case No. 05-55927-R
         Debtors.                                              Chapter 11
_____/

Collins & Aikman Corp., et al,
         Plaintiff,                                             Adv. No. 07-05587

v.                                                              **Track III**

Valeo, Valeo Vision Mazamet, Valeo
Sylvania LLC and Valeo Switches &
Detection,
         Defendants.
_____/

Collins & Aikman Corp., et al,
         Plaintiff,                                             Adv. No. 07-05517

v.                                                              **Track III**

Autoliv ASP, Inc.,

         Defendant.
_____/

Collins & Aikman Corp., et al,
         Plaintiff,                                             Adv. No. 07-04937

v.                                                              **Track II**

Electro Chemical,

         Defendant.
_____/

Collins & Aikman Corp., et al,
         Plaintiff,                                             Adv. No. 07-05403

v.     **Track II**

Plastic Engineering & Technology and Plastic
Engineering & Technical Services, Inc.,

         Defendants.
_____/

Collins & Aikman Corp., et al,
         Plaintiff,          Adv. No. 07-05232

v.     **Track II**

SPI LLC,

         Defendant.
_____/

Collins & Aikman Corp., et al,
         Plaintiff,          Adv. No. 07-05490

v.     **Track II**

Acord Holdings, LLC and Acord Inc.,

         Defendants.
_____/

Collins & Aikman Corp., et al,
         Plaintiff,          Adv. No. 07-04810

v.     **Track II**

Borg Instruments AG,

         Defendant.
_____/

Opinion Regarding Defendants' Motion for Summary Judgment

I.

On May 17, 2005, C&A Corporation, C&A Products and all of their U.S. subsidiaries filed for chapter 11 relief. At that time, C&A Products was the indirect corporate parent of two Canadian subsidiaries, C&A Automotive and C&A Canada. The defendants in these adversary proceedings sold goods to C&A Automotive and received payment from bank accounts owned and maintained by C&A Products. These payments were made through the debtors' centralized cash management system whereby cash from the debtors and their non-debtor subsidiaries and affiliates flowed through C&A Products accounts in the United States, Canada, Europe, Brazil and Mexico.

When the debtors filed for chapter 11 protection, they requested, as part of their first day motions, an order authorizing the continued use of the cash management system. The debtors' motion argued that such an order was critical to their operations and necessary to efficiently and effectively operate their large, complex business operations. On May 17, 2005, the Court entered an interim order approving the debtors' first day motion. On September 2, 2005, the order was made final.

The debtors filed their first amended plan and disclosure statement on January 24, 2007. Ballots and objections to the plan were due May 7, 2007. The order confirming the plan was entered on July 18, 2007.

On May 15, 2007, C&A Canada was granted protection under the Canadian Companies' Creditors Arrangement Act R.S.C. 1985 ("CCAA"). On July 19, 2007, C&A Automotive filed for protection under the CCAA. C&A Automotive requested that the Canadian court approve the continued use of the cash management system, arguing that it was imperative. The Canadian court approved the continued use of the system.

3

The plaintiffs filed these adversary proceedings between May 10, 2007 and May 17, 2007, alleging preferential transfers and fraudulent conveyances. All but two of the defendants were served with the complaint prior to confirmation of the plan. The plaintiffs dismissed the preference claims when it was brought to their attention that the payments at issue were for goods sold to C&A Automotive, and not the debtors. Therefore, the defendants were not creditors of the debtors with respect to the transfers. The debtors seek to avoid the payments made to the defendants by C&A Products during the 90 days prepetition for the goods provided by the defendants to C&A Automotive because C&A Products was insolvent at the time and C&A Products did not receive reasonably equivalent value in exchange for the transfers. 11 U.S.C. § 548(a)

II.

A. Defendants' Arguments

The defendants move for summary judgment on three grounds: 1) judicial estoppel; 2) res judicata; and 3) undisputed facts showing that C&A did receive reasonably equivalent value.

In support of their argument that judicial estoppel applies, the defendants argue that the debtors made representations to the Court in connection with their first day motions that the cash management system was of inherent and absolute value to the debtors' operations and that distributions made on behalf of C&A's non-debtor foreign affiliates were valuable to the debtors because the foreign affiliates were critical to the debtors' operations and would increase the overall value of C&A. The defendants' argue that the plaintiffs' current position is inconsistent with that prior representation.

In support of their argument that the plaintiffs' claims are barred by the doctrine of res judicata, the defendants argue that the claims were not preserved in the confirmed plan. The

4

defendants contend that the debtors' blanket reservation of claims does not protect these claims.

Finally, the defendants assert that the debtor did in fact receive reasonably equivalent value in exchange for the transfers. The defendants argue that they supplied goods to C&A Automotive, which allowed it to operate and create products that were sold to its customers, including the debtors. They contend that non-debtor customer payments derived from products delivered to C&A Automotive were swept into the debtor through the centralized cash management system. Therefore, the defendants contend that the debtor received the benefit, including cash proceeds, from the products supplied by the defendants.

## B. Plaintiffs' Responses

The plaintiffs assert that the defendants' judicial estoppel argument must be rejected because the debtors' representations to the Court in its first day motions that the cash management system was important to the debtors does not translate into a representation that payments made to the defendants through the cash management system yielded reasonably equivalent value. The plaintiffs argue that the fact that the cash management system is valuable as a whole does not mean that every dollar expended through it also provided value. The plaintiffs contend that each transfer must be evaluated and that it cannot simply be assumed that reasonably equivalent value was received. The plaintiffs further contend that the representations made to the Court regarding the importance of maintaining the cash management system were prospective and did not relate to the value of the cash management system at the time the transfers in question were made.

The plaintiffs also argue that the debtors did not persuade the Court to accept an earlier position that is inconsistent with its current position that the transfers did not provide reasonably equivalent value. The plaintiffs assert that the defendants cannot identify any statements that the

debtors made to the Court that were inconsistent with the debtors' current position.

In response to the defendants' argument that the fraudulent transfer claims are barred by res judicata, the plaintiffs argue that the claims were reserved in the plan and, in any event, the complaints were filed before the plan was confirmed. The plaintiffs assert that a "final decision on the merits" did not occur until the plan was confirmed on July 18, 2007. However, the complaints were filed in May 2007.

The plaintiffs also argue that they reserved their right to litigate the fraudulent transfer claim on several occasions. They contend that their disclosure statement, filed December 22, 2006, provided, in part, "The Debtors are currently investigating prepetition transfers that may be avoided under Chapter 5 of the Bankruptcy Code or relevant and applicable state law, such as the Uniform Fraudulent Transfer Act. Among other things, the Debtors are looking at transfers . . . for which the Debtors may not have received reasonably equivalent value in exchange . . . and transfers made while the debtors were insolvent . . . ."

The plaintiffs further rely on their January 25, 2007, Nonexclusive List of the Retained Causes of Action, filed with the Court. The list includes each of the defendants and, as to each, specifically preserves "Causes of Action arising or permitted under chapter 5 of the Bankruptcy Code or applicable state law, including preferences under § 547 of the Bankruptcy Code and fraudulent transfers." Thus, the plaintiffs argue, they did much more than include a general reservation of rights, as the defendants assert.

Finally, the plaintiffs argue that there are no facts before the Court from which to conclude that the debtors received reasonably equivalent value in exchange for the transfers.

6

III.

A. Judicial Estoppel

In *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, LLP*, 546 F.3d 752 (6th Cir. 2008), the Sixth Circuit explained the doctrine of judicial estoppel as follows:

> "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire*, 532 U.S. [742] at 749, 121 S. Ct. 1808 (quotations and citation omitted). "Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne Indus., Inc. v. Nat'l Labor Relations Board*, 911 F.2d 1214, 1217-18 (6th Cir. 1990). "The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Browning*, 283 F.3d at 775 (*quoting Teledyne*, 911 F.2d at 1218). A court should also consider whether the party has gained an unfair advantage from the court's adoption of its earlier inconsistent statement. *New Hampshire*, 532 U.S. at 751, 121 S. Ct. 1808. Although there is "no set formula for assessing when judicial estoppel should apply," *In re Commonwealth Institutional Sec.*, 394 F.3d 401, 406 (6th Cir. 2005), it is well-established that at a minimum, "a party's later position must be 'clearly inconsistent' with its earlier position[ ]" for judicial estoppel to apply, *New Hampshire*, 532 U.S. at 750, 121 S. Ct. 1808 (citation omitted). Moreover, the doctrine of judicial estoppel "is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." *Teledyne*, 911 F.2d at 1218.

*Lorillard Tobacco Co.* at 757.

In their first day motions, the debtors argued that they should be permitted to continue using their cash management system because doing so would provide the debtors with significant value.

7

The debtors stated that disrupting their cash management system would severely impair the debtors' ability to preserve their respective going concern values and successfully reorganize.

The defendants contend that the above position is inconsistent with the plaintiffs' current position that payments made to the defendants through the cash management system did not provide value to the debtors because the payments were from C&A Products for goods purchased by C&A Automotive.

As stated in *Lorillard Tobacco Co.*, "a party's later position must be 'clearly inconsistent' with its earlier position" for judicial estoppel to apply. *Id.* at 757. The debtors' prior statement referred to the cash management system as a whole and its benefits to the debtors' operations in the future. The plaintiffs' current claims seek recovery of specific individual transfers to the defendants and assert that the debtors received no reasonably equivalent value for each such transfer. Such a claim is not "clearly inconsistent" with the debtors' prior position. Accordingly, the defendants' motion for summary judgment as to this issue is denied.

## B. Res Judicata

A claim is barred by res judicata if all of the following elements are present: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Browning v. Levy* 283 F.3d 761, 771 (6th Cir. 2002).

As a general rule, the "[c]onfirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings." *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992). Confirmation of a plan by a bankruptcy court "has the effect of a judgment by

8

the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings." *Still v. Rossville Bank* (*In re Chattanooga Wholesale Antiques, Inc*.), 930 F.2d 458, 463 (6th Cir. 1991). Res judicata does not apply where a claim is expressly reserved by the litigant in the earlier bankruptcy proceeding. *D & K Props. Crystal Lake v. Mut. Life Ins. Co.*, 112 F.3d 257, 260 (7th Cir. 1997). However, a general reservation of rights does not suffice to avoid res judicata. *Id.*

The plan was confirmed on July 18, 2007. That was the date of the "final decision on the merits." Regardless of when ballots or objections to the plan were due, res judicata cannot be applied to claims asserted before then. These adversary proceedings were all filed in May 2007 and all but two were served before the plan was confirmed. Therefore, they were not barred by the confirmed plan.

In any event, the Court must conclude that the claims were preserved in the plan. As noted, on January 24, 2007, the debtors filed an amendment to the plan and disclosure statement, which included a Nonexclusive List of the Retained Causes of Action. The list included each of these defendants and, as to each, specifically preserves "Causes of Action arising or permitted under chapter 5 of the Bankruptcy Code or applicable state law, including preferences under § 547 of the Bankruptcy Code and fraudulent transfers." (See Ex. A. to the Flores Declaration, Pl's Response to M. Summ. J.).

Accordingly, the defendants' motion to dismiss on the basis of res judicata is denied.

### C. Undisputed Facts Establishing Reasonably Equivalent Value

With respect to the defendants' final argument, the Court must conclude that there are genuine issues of material fact as to: (1) whether the debtors did in fact receive any value in

9

exchange for the challenged transfers, and (2) if so, whether such value was reasonably equivalent.

Accordingly, the defendants' motion for summary judgment as to this issue is denied.


For Publication

**Signed on March 17, 2009**

                                                **/s/ Steven Rhodes**
                                             **Steven Rhodes**
                                             **Chief Bankruptcy Judge**